# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT TENNY, | ) |
|     Plaintiff, | ) No. 16 C 11141 |
| | ) |
| v. | ) Magistrate Judge M. David Weisman |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Robert Tenny appeals the Commissioner's decision denying his application for Social Security benefits. For the reasons set forth below, the Court reverses the Commissioner's decision.

## Background

Plaintiff filed an application for benefits on January 16, 2013, alleging a disability onset date of June 12, 2000. (R. 78.) His application was denied initially on May 24, 2013, and again on reconsideration on October 31, 2013. (R. 89, 102.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 28, 2015. (R. 38-77.) On July 29, 2015, the ALJ issued a decision denying plaintiff's application. (R. 15-26.) The Appeals Council denied review (R. 1-4), leaving the ALJ's decision as the final decision of the Commissioner. *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

---

[1]On January 23, 2017, Nancy A. Berryhill succeeded Carolyn W. Colvin as Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (last visited Aug. 22, 2017). Accordingly, the Court substitutes Berryhill for Colvin pursuant to Federal Rule of Civil Procedure 25(d).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether he is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step five to the Commissioner to provide evidence that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date, January 16, 2013. (R. 17.) At step two, the ALJ found that plaintiff had the severe impairments of "bipolar disorder and borderline intellectual functioning." (*Id.*) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 18.) At step four, the ALJ found that plaintiff had no past relevant work (R. 25), but had the RFC to perform "simple, routine and repetitive tasks; performed in a work environment free of fast-paced production requirements; involving only simple work-related decisions; with few, if any, workplace changes; and with only brief and superficial interaction with the public and coworkers" (R. 20). At step five, the ALJ found that jobs exits in significant numbers in the national economy that plaintiff can perform, and thus he is not disabled. (R. 25-26.)

Plaintiff argues that the ALJ erred in finding that plaintiff does not meet Listing 12.05C,[2] which provides:

> 12.05 Intellectual Disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met [with] . . . [a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

https://secure.ssa.gov/poms.nsf/lnx/0434132009 (last visited Aug. 22, 2017). Adaptive functioning is how well a person "meet[s] standards of personal independence and social responsibility in one or more aspects of daily life, including communication, social participation, academic or occupational functioning, and personal independence at home or in community settings." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders, available at* http://dsm.psychiatryonline.org/doi/full/10.1176/appi.books.9780890425596.dsm01.

---

[2] Listing 12.05C was eliminated effective January 1, 2017.

Plaintiff has the requisite IQ (R. 314-16), and bipolar disorder, another impairment that imposes additional and significant work-related limitations. (*See* R. 17 (ALJ finding that plaintiff has the "severe" impairment of bipolar disorder); *see also* 20 C.F.R. § 404.1522(a) (an impairment is "severe" if it "significantly limit[s] [the] physical or mental ability to do basic work activities"). However, the ALJ concluded, without further elaboration, that "the record does not establish the requisite deficits in adaptive functioning." (R. 20.)

The Court disagrees. The record shows that plaintiff had a variety of deficits in adaptive functioning before age 22: (1) he had an individual education plan when he was in high school for a learning disability that manifested as "difficulty expressing thoughts and ideas in a fluent and effective manner" (R. 178-79); (2) he dropped out of high school in tenth grade and made three unsuccessful attempts to obtain a GED (R. 315-16); (3) at age twenty-one, he was assessed as being mildly mentally retarded (*id.*); (4) he is unable to manage money (*id.* (psychologist opining that plaintiff cannot manage his own funds); R. 205 (plaintiff's father stating that plaintiff "[has] trouble with counting change"); R. 59 (plaintiff's mother testifying that, years earlier, she had given plaintiff money to buy bread and rice and he returned without the bread, the rice, or the money)); and (5) has never had a job (R. 315). In short, the ALJ's conclusion that plaintiff does not have deficits in adaptive functioning is not supported by substantial evidence.

The Commissioner attempts to defend the ALJ's misguided analysis in a rather odd and ineffective fashion. (*See* Def.'s Mem. Supp. Mot. Summ. J., Dkt. 30 at 3.) The Commissioner defends the ALJ's review of medical evidence, in which the ALJ concludes that medical records after 2009 "contain little, if any, mention of the claimant's intellectual functioning." (R. 22; *see*, *e.g.*, R. 320 (mental health consult noting that plaintiff was twenty-three years old and in tenth grade special education classes); R. 323 (review of efficacy of higher dose of Prozac); R. 375-80,

391-93 (Aunt Martha's Youth Service Center reports while plaintiff was on probation); R. 414-18 (psychiatric evaluation at Ingalls Hospital noting, inter alia, that plaintiff is twenty-six years old, unemployed, with a tenth grade education); R. 428 (Aunt Martha's psychiatric consult).) While it is true that these records include little "mention of the claimant's intellectual functioning," we are at a loss as to what conclusion one could possibly draw from this absence of reference. The records cited by the Commissioner relate to treatment for *mental health* issues not treatment or evaluation for *intellectual functioning*. The Commissioner cannot possibly equate these two distinct and unrelated conditions, yet the Commissioner's argument does just that.

Moreover, the absence of any reference or discussion regarding plaintiff's compromised intellectual functioning cannot possibly mean it does not exist. Most of the medical records cited by the Commissioner do not reference the condition of plaintiff's appendages. Should we thus conclude that the plaintiff has none? The ALJ's conclusion that plaintiff's medical records "[do] not establish the requisite deficits in adaptive functioning" (R. 20) is plainly not supported by the record. Similarly, the Commissioner's efforts to defend such an erroneous conclusion are equally lacking in legal and factual support.

Plaintiff also contends that the ALJ erred in rejecting the opinion of his treating physician, Dr. Carter. Among other things, Dr. Carter said that plaintiff could understand, remember, and carry out "very short and simple instructions," ask simple questions or request assistance, and "adhere to basic standards of neatness and cleanliness." (R. 433-34.) However, Dr. Carter said plaintiff was "seriously limited" in the ability to "make simple work-related decisions," "accept instructions," "respond appropriately to criticism," and "interact appropriately with the general public," and was "unable to meet competitive standards" or had

5

"no useful ability" to: (1) "remember work-like procedures;" (2) "maintain attention for [a] two hour segment;" (3) "maintain regular attendance and be punctual within customary, usually strict tolerances;" (4) "sustain an ordinary routine without special supervision;" (5) "work in coordination with or proximity to others without being unduly distracted;" (6) "complete a normal workday and workweek without interruptions from psychologically based symptoms;" (7) "perform at a consistent pace without an unreasonable number and length of rest periods;" (8) "get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes;" (9) "respond appropriately to changes in a routine work setting;" (10) "deal with normal work stress;" (11) "be aware of normal hazards and take appropriate precautions;" (12) "understand and remember detailed instructions;" (13) "carry out detailed instructions;" and (14) "set realistic goals or make plans independently of others." (*Id.*) Dr. Carter also said that plaintiff has "marked" limitations in "maintaining social functioning" and "maintaining concentration, persistence or pace." (*Id.* at 435.)

The ALJ rejected Dr. Carter's opinion on the grounds that it was "generally inconsistent with the medical evidence of record, including Dr. Carter's own clinical findings." (R. 23-24.) The ALJ did not, however, identify the allegedly inconsistent medical evidence, and Dr. Carter's records suggest that plaintiff's depression waxes and wanes. (*Compare* R. 375, 377-80, *with* R. 376, 393.) Thus, though he was required to do so, the ALJ did not give good reasons for the weight he assigned Dr. Carter's opinion. *Bates v. Colvin*, 736 F.3d 1093, 1101 (7th Cir. 2013); *Roddy v. Astrue*, 705 F.3d 631, 636-37 (7th Cir. 2013).

The ALJ also failed to evaluate Dr. Carter's opinion according to the regulations. "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of

examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527(c). There is no evidence that the ALJ considered these factors before rejecting Dr. Carter's opinion.

The ALJ's assessment of the opinion of the consultative examiner has the same flaws. The ALJ gave "little weight" to Dr. Goebel's opinion that plaintiff has "marked impairment of understanding and memory, sustained concentration and persistence, and social interaction and adaptation" because it was "not consistent with the claimant's medical records as whole, particularly Dr. Carter's treatment records." (R. 24.) Again, however, the ALJ did not specifically identify the allegedly contrary evidence and, as discussed above, Dr. Carter's records are not necessarily inconsistent with Dr. Goebel's findings.

For the same reasons, the ALJ's decision to give "great weight" (R. 23) to the opinions of the non-examining state agency doctors is also not supported by the record. The ALJ credited their opinions that plaintiff is only moderately impaired because the opinions were "generally consistent with claimant's medical records." (*Id.*) The ALJ did not, however, identify the consistent evidence and there is ample evidence that suggests plaintiff is more than moderately impaired. (*See, e.g.*, R. 316 ("Current evaluation as well as his history gives the appearance of a student who is probably functioning within the mild range of mental retardation."); R. 400-17 (records from Ingalls Hospital documenting plaintiff's admission for delusions and auditory hallucinations); R. 46 (plaintiff's testimony that he has mood swings and punches a wall when he gets angry); R. 53, 59, 62 (plaintiff's mother testifying that he sometimes has difficulty communicating, cannot handle money, talks to himself, has crying jags, and laughs out loud for no reason); R. 252 (plaintiff's father saying the same).)

7

In short the ALJ's assessment of the medical evidence is not supported by substantial evidence. On remand the ALJ will have to reassess the medical evidence and revisit the other issues, such as plaintiff's mental RFC, which are informed by that evidence.

**Conclusion**

For the reasons set forth above, the Court denies the Commissioner's motion for summary judgment [29], reverses the Commissioner's decision, and remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**                              **ENTERED:   September 29, 2017**

_____
**M. David Weisman**
**United States Magistrate Judge**